UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARCTIC COOL, LLC,

                Plaintiff,

  -against-

ONTEL PRODUCTS CORPORATION,

                Defendant.

__ CIV. ___

COMPLAINT

ARCTIC COOL, LLC, for its complaint against defendant ONTEL PRODUCTS CORPORATION, alleges as follows:

1. This is an action for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), common law trademark infringement, and trademark dilution under New York Gen. Bus. Law § 360-l, arising from Ontel Product Corporation's use of trademarks that infringe upon the marks used by Arctic Cool LLC to identify its goods.

2. Plaintiff seeks both injunctive and monetary relief.

## THE PARTIES

3. Plaintiff Arctic Cool, LLC (hereinafter "Arctic Cool") is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 10 West 33rd Street, New York, New York.

4. Defendant Ontel Products Corporation ("Ontel" or "Defendant") is a corporation organized under the laws of the State of New Jersey, with its principal place of business at 21 Law Drive, Fairfield, New Jersey.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under the trademark laws of the United States, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1332(a) and 1338(a).

6. This Court also has jurisdiction over the state law claims under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367, because the federal and state claims are based on the same operative facts, and judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises jurisdiction over the state law claims.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Ontel is subject to this Court's personal jurisdiction with respect to the claims asserted herein. Defendant has advertised, promoted, distributed, offered to sell and/or sold its products in this District and has made unauthorized use of Artic Cool's trademarks in this District as set forth below.

## FACTS COMMON TO ALL CAUSES OF ACTION

8. Arctic Cool designs, manufactures and sells a unique line of apparel for men, women and children that incorporates advanced fabrics and design that wick heat away from the wearer's body as soon as the body begins to sweat.

9. Arctic Cool's very high quality products, appealing designs and excellent customer service have generated widespread acceptance and success in the market.

10. Artic Cool owns Registration No. 4,765,830, registered June 30, 2015, with a date of first use in January 2015, for use of the mark ARCTIC COOL in connection with

headbands and shirts. Attached as Exhibit 1 is a true and correct copy of the registration certificate for Plaintiff's ARCTIC COOL mark.

11. Artic Cool owns Registration No. 4,804,142, registered September 4, 2015, with a date of first use in July 2014, for use of the mark KEEP ACTIVE. KEEP COOL! in connection with towels and shirts. Attached as Exhibit 2 is a true and correct copy of the registration certificate for Plaintiff's KEEP ACTIVE. KEEP COOL! mark.

12. Artic Cool owns Registration No. 4,859,668, registered November 24, 2015, with a date of first use in April 2015, for use of the mark



in connection with towels, headbands and shirts. Attached as Exhibit 3 is a true and correct copy of the registration certificate for Plaintiff's ARCTIC COOL plus design mark.

13. Artic Cool owns Registration No. 4,966,447, registered May 24, 2016, with a date of first use in May 2015, for use of the mark HYDROFREEZE in connection with athletic shirts and shirts. Attached as Exhibit 4 is a true and correct copy of the registration certificate for Arctic Cool's HYDROFREEZE mark.

14. Artic Cool owns Registration No. 5,307,784, registered October 10, 2017, with a date of first use in August 2017, for use of the mark ARCTIC COOL in connection with hats, shorts, shirts and other tops. Attached as Exhibit 5 is a true and correct copy of the registration certificate for Plaintiff's ARCTIC COOL mark.

15. Since November 2017 Arctic Cool has used a stylized "A" mark in connection with its line of cooling apparel products. The Artic Cool stylized "A" mark has quickly come to signify the quality and reputation of Arctic Cool's cooling apparel products to consumers in the United States.

16. The above marks are referred to herein collectively as the "Arctic Cool Marks" and the above trademark registrations are referred to herein collectively as the "Arctic Cool Registrations."

17. The Arctic Cool Registrations are valid and subsisting and Arctic Cool actively polices the Arctic Cool Marks.

18. Since its adoption and use of the Arctic Cool Marks, Artic Cool has extensively advertised, distributed, and sold goods bearing the Artic Cool Marks.

19. Arctic Cool promotes and sells products bearing the Arctic Cool Marks directly to consumers through its website at arcticcool.com, through Amazon.com, through Walmart.com, among others. Arctic Cool also promotes its products on Facebook, YouTube, Twitter and Instagram.

20. Attached as Exhibit 6 is a true and correct copy of a screenshot of a page from the Arctic Cool website (articcool.com) showing the Arctic Cool Instant Cooling Bucket Hat, a soft panel brim hat with UV protection and incorporating Arctic Cool's HYDROFREEZE technology to keep the wearer cool and dry by wicking moisture away from the wearer's skin while lowering body temperature. The Arctic Cool Instant Cooling Bucket Hat is one of the products that Arctic Cool promotes and identifies using the Arctic Cool Marks.

21. Attached as Exhibit 7 is a true and correct copy of a screenshot of a page from the Arctic Cool website (articcool.com) showing the Arctic Cool Instant Cooling Cap, an adjustable unstructured cap incorporating Arctic Cool's HYDROFREEZE technology. The Arctic Cool Instant Cooling Cap is one of the products that Arctic Cool promotes and identifies using the Arctic Cool Marks.

22. Arctic Cool has sold thousands of Instant Cooling Bucket Hats, Instant Cooling Caps, and other products bearing the Arctic Cool Marks, throughout the United States and in this District.

23. The Arctic Cool Marks are recognized in the market as designating high performance cooling apparel incorporating the best quality materials and designs backed by the highest level of customer service.

## DEFENDANT'S UNLAWFUL ACTIVITIES

24. Defendant Ontel is a manufacturer of various consumer products, including toys, fitness equipment, tooth whiteners and measuring tapes. As Ontel announces on its website, "Ontel Products are composed of many individual brands, spanning across multiple consumer categories…." Ontel uses a wide array of disparate marks to identify its "many individual brands," including HUGGLE HOODIE, PIGGY POP, DUST DADDY, VEGGETTI, MAGIC TRACKS, and many others.

25. Without Arctic Cool's authorization, and upon information and belief, beginning after Arctic Cool acquired protectable exclusive rights in its Arctic Cool Marks, Ontel adopted and began using the mark ARCTIC HAT in connection with the promotion and sale of an "Evaporative Cooling Hat with UV Protection" in two styles, a brimmed hat and a cap.

26. Without Arctic Cool's authorization, and upon information and belief, beginning after Arctic Cool acquired protectable exclusive rights in its Arctic Cool Marks, Ontel adopted and began using the ARCTIC HAT logo:



in connection with the promotion and sale of an "Evaporative Cooling Hat with UV Protection" in two styles, a brimmed hat and a cap.

27. Without Arctic Cool's authorization, and upon information and belief, beginning after Arctic Cool acquired protectable exclusive rights in its Arctic Cool Marks, Ontel adopted and began using a stylized "A" mark :



in connection with the promotion and sale of an "Evaporative Cooling Hat with UV Protection" in two styles, a brimmed hat and a cap.

28. Without Arctic Cool's authorization, and upon information and belief, beginning after Arctic Cool acquired protectable exclusive rights in its Arctic Cool Marks, Ontel adopted and began using the mark HYDRO-CHILL in connection with the promotion and sale of an "Evaporative Cooling Hat with UV Protection" in two styles, a brimmed hat and a cap.

29. The ARCTIC HAT word mark, the Arctic Hat logo, the Arctic Hat stylized "A", and the HYDRO-CHILL mark as adopted and used by Ontel (collectively referred

to hereinafter as the "Infringing Marks") are confusingly similar to Arctic Cool's Arctic Cool Marks.

30. Ontel has and is engaged in advertising, promoting, offering for sale, and selling goods using the Infringing Mark throughout the United States and in this District.

31. Ontel promotes its products through its own websites and through various social media, including YouTube. Attached as Exhibit 8 is a true and correct copy of a screenshot of Ontel's website at www.buyarctichat.com.

32. In order to increase the likelihood that consumers will be confused into thinking that Ontel's products are related to, endorsed by or made by Arctic Cool, Ontel uses the Infringing Marks in ways that are intended to make them more likely to be confused with Arctic Cool and the Arctic Cool Marks.

33. The confusing similarity between Arctic Cool's stylized "A" mark and Ontel's stylized "A" mark is readily apparent from a side-by-side comparison of browser tabs generated by Arctic Cool's website and Ontel's Arctic Hat website:

A Bucket Hat - UPF 50+ Ratin  ✕   A Arctic Hat™ Rated 4.5/5 | D  ✕

(and see Exhibits 6 and 7).

34. Ontel uses the Infringing Marks to promote its products on YouTube video, and again increases the likelihood of consumer confusion by combining the Infringing Marks with graphics that are nearly identical to those used by Arctic Cool in its own promotional video, as demonstrated in the following screenshots:

7



35. Ontel sells its hat and cap using the Infringing Marks direct to consumers on Amazon.com, on Walmart.com, and through its own websites.

36. Upon information and belief, Ontel's hat and cap are inferior in quality to Arctic Cool's Arctic Cool Instant Cooling Bucket Hat and Arctic Cool Instant Cooling Cap.

37. Upon information and belief, the customer support services offered by Ontel in connection with the Infringing Marks and products marketed under the Infringing Marks are inferior in quality to Arctic Cool's customer support services.

38. On July 26, 2019, counsel for Arctic Cool sent a cease and desist letter to Ontel objecting to Ontel's use of the Infringing Marks. Exhibit 9 is a true and correct copy of Arctic Cool's counsel's cease and desist letter to Ontel.

39. To date, Ontel has not complied with the demands set out in Plaintiff's counsel's cease and desist letter.

40. Ontel's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Ontel's goods and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Ontel's goods originate from, are associated or affiliated with, or otherwise authorized by Arctic Cool.

41. Ontel's infringing acts as alleged herein have resulted in actual confusion as evidenced by numerous customer complaints regarding Ontel's products and customer service that have been directed to and received by Arctic Cool. Arctic Cool has forwarded to Ontel documents evidencing multiple examples of actual confusion.

42. Upon information and belief, Ontel's acts are willful with the deliberate intent to trade on the goodwill of the Arctic Cool Marks, cause confusion and deception in the marketplace, and divert potential sales of Arctic Cool to the Ontel.

43. Ontel's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Arctic Cool and to its valuable reputation and goodwill with the consuming public for which Arctic Cool has no adequate remedy at law.

## FIRST CAUSE OF ACTION FOR TRADEMARK INFRINGEMENT

44. Plaintiff repeats and realleges paragraphs 1 through 43 of this complaint as if fully set forth herein.

45. Arctic Cool owns the Arctic Cool Marks and such registrations are valid and enforceable.

46. Ontel's marks are confusingly similar to the Arctic Cool Marks in appearance, sound, and commercial impression.

47. Ontel's use of the Infringing Marks in the marketing of products that are similar to Arctic Cool's products, that are directed to the same consumers, and that are marketed and sold through the same channels of trade, has caused and is likely to cause confusion or mistake with the Arctic Cool Marks, or to deceive as to source, affiliation, or sponsorship with Arctic Cool, in violation of the Lanham Act, 15 U.S.C. § 1114.

48. Arctic Cool has been and/or is likely to be damaged by Ontel's trademark infringement in an amount to be determined at trial.

49. Ontel's use of the Infringing Marks in the marketing of products that are similar to Arctic Cool's products, that are directed to the same consumers, and that are marketed and sold through the same channels of trade, has been committed with the knowledge of Arctic Cool's exclusive rights and goodwill in the Arctic Cool Marks and with the knowledge that Ontel's use of the Infringing Marks is likely to cause confusion; therefore, Ontel's conduct is willful, deliberate, intentional, and/or in bad faith, making this an exceptional case.

50. As a result of Ontel's trademark infringement, Ontel has caused, and will continue to cause, irreparable harm to Arctic Cool and the goodwill associated with the Arctic Cool Marks for which Arctic Cool has no adequate remedy at law. Therefore, Arctic Cool is entitled to injunctive relief.

## SECOND CAUSE OF ACTION FOR UNFAIR COMPETITION

51. Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 50 of the Complaint as if fully set forth herein.

52. Artic Cool has common law and federal trademark rights in the Artic Cool Marks, which are uniquely associated with Artic Cool as a source of goods and services offered in connection with the Artic Cool Marks.

53. The Infringing Marks are confusingly similar to the Artic Cool Marks in appearance, sound, and commercial impression.

54. Ontel's use of the Infringing Marks in the marketing of products that are similar to Arctic Cool's products, that are directed to the same consumers, and that are marketed and sold through the same channels of trade, has caused and is likely to cause confusion or mistake with the Artic Cool Marks, or to deceive as to source, affiliation, connection, association, or sponsorship of Ontel with Artic Cool, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

55. Ontel's use of the Infringing Marks in the marketing of products that are similar to Arctic Cool's products, that are directed to the same consumers, and that are marketed and sold through the same channels of trade, constitutes unfair competition and Artic Cool has been, and will continue to be, damaged by Ontel's acts in an amount to be determined at trial.

56. Ontel's conduct is willful, deliberate, intentional, and/or in bad faith, making this an exceptional case.

57. Ontel's acts of unfair competition have caused, and will continue to cause, irreparable harm to Artic Cool and the goodwill associated with the Artic Cool Marks, for which Artic Cool has no adequate remedy at law. Therefore, Artic Cool is entitled to injunctive relief.

### THIRD CAUSE OF ACTION FOR COMMON LAW TRADEMARK INFRINGEMENT

58. Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 57 of the Complaint as if fully set forth herein.

59. Artic Cool owns the Artic Cool Marks.

60. Ontel's Infringing Marks are confusingly similar to the Arctic Cool Marks in appearance, sound, and commercial impression.

61. Ontel's use of the Infringing Marks in the marketing of products that are similar to Arctic Cool's products, that are directed to the same consumers, and that are marketed and sold through the same channels of trade, has caused and is likely to cause confusion or mistake with the Artic Cool Marks, or to deceive as to source, affiliation, or sponsorship with Artic Cool in violation of Artic Cool's common law trademark rights.

62. Artic Cool has been and/or is likely to be damaged by Ontel's trademark infringement in an amount to be determined at trial.

63. Ontel's use of the Infringing Marks in the marketing of products that are similar to Arctic Cool's products, that are directed to the same consumers, and that are marketed and sold through the same channels of trade, has been committed with the

knowledge of Artic Cool's exclusive rights and goodwill in the Artic Cool Marks; therefore, Ontel's conduct is willful, deliberate, intentional, and/or in bad faith.

64. As a result of Ontel's trademark infringement, Ontel has caused, and will continue to cause, irreparable harm to Arctic Cool and the goodwill associated with the Arctic Cool Marks for which Arctic Cool has no adequate remedy at law. Therefore, Ontel is entitled to injunctive relief.

## FOURTH CAUSE OF ACTION FOR NEW YORK TRADEMARK DILUTION UNDER N.Y. GEN. BUS. LAW § 360-L

65. Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 64 of the Complaint as if fully set forth herein.

66. Each of the Artic Cool Marks has a distinctive quality attributable to the inherent strength of the marks, the history of the Artic Cool Marks, the quality of Artic Cool's products that use those marks, extensive promotion of those marks, and the goodwill associated with the Artic Cool Marks. The Artic Cool Marks are widely recognized by the general public of the United States as designations of the source of the goods of Artic Cool. These marks have also acquired secondary meaning for the same reasons.

67. Use in commerce by Ontel of the Infringing Marks in the marketing of products that are similar to Arctic Cool's products, that are directed to the same consumers, and that are marketed and sold through the same channels of trade, is likely to create an association among the general consuming public arising from the similarity between the Infringing Marks, in general and in connection with use on similar product lines, that will dilute the distinctiveness of the Artic Cool Marks, including by

diminishing the ability of the Artic Cool Marks to serve as a unique product identifier. Additionally, if the goods offered under Ontel's Infringing Marks are of poor quality, any use by Ontel of the Infringing Marks will tarnish the invaluable goodwill and reputation symbolized by the Artic Cool Marks. Thus, use by Ontel of Infringing Marks is likely to cause dilution of the Artic Cool Marks in violation of N.Y. Gen. Bus. Law § 360-l.

68. Ontel's use of the Infringing Marks in the marketing of products that are similar to Arctic Cool's products, that are directed to the same consumers, and that are marketed and sold through the same channels of trade, has been committed with the knowledge of Artic Cool's exclusive rights and goodwill in the Artic Cool Marks and with the knowledge that Ontel's use of the Infringing Marks is likely to impair the distinctiveness of the famous Artic Cool Marks; therefore, Artic Cool's conduct is willful, deliberate, intentional, and/or in bad faith.

69. As a result of Ontel's use of the Infringing Marks, Artic Cool is likely to suffer an injury to its business reputation, and dilution of the distinctive quality of its marks.

70. As a result of Ontel's trademark dilution, Artic Cool has caused, and will continue to cause, irreparable harm to Artic Cool and the goodwill associated with the Artic Cool Marks for which Artic Cool has no adequate remedy at law. Therefore, Artic Cool is entitled to injunctive relief.

WHEREFORE, plaintiff Arctic Cool, LLC, respectfully requests that this Court:

A. Enter a judgment against defendant Ontel on all counts;

B. Declare that defendant Ontel has committed trademark infringement in violation of 15 U.S.C. § 1114;

C. Declare that defendant Ontel has committed unfair competition in violation of the provisions of 15 U.S.C. §1125(a);

D. Declare that defendant Ontel has committed common law trademark infringement;

E. Declare that defendant Ontel has committed trademark dilution in violation of N.Y. Gen. Bus. Law § 360-l;

F. Enjoin defendant Ontel and its agents, servants, employees, attorneys, successors, and assigns, and all persons in active concert or participation it, both preliminarily during the pendency of this action and permanently from further infringing the Ontel Marks;

G. Enjoin defendant Ontel and its agents, servants, employees, attorneys, successors, and assigns, and all persons in active concert or participation with it, both preliminarily during the pendency of this action and permanently from further acts of dilution directed against Artic Cool;

H. Enjoin defendant Ontel and its agents, servants, employees, attorneys, successors, and assigns, and all persons in active concert or participation with it, both preliminarily during the pendency of this action and permanently from further acts of false advertising, unfair competition, and misappropriation directed against Artic Cool;

I. Award Artic Cool compensatory damages for the acts complained of herein in an amount to be determined at trial;

J. Award to Artic Cool all profits attributable to Ontel's violations of the Lanham Act and order that an accounting of Ontel's profits be rendered;

K. Award to Artic Cool its full costs, disbursements, and reasonable attorneys' fees incurred in this action; and

L. Award to Artic Cool such additional and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: New York, New York
October 30, 2019

_____
Mario Aieta
Jennifer Philbrick McArdle
SATTERLEE STEPHENS LLP
230 Park Avenue
New York, New York 10169
Phone: (212) 818-9200
Fax: (212) 818-9606
maieta@ssbb.com

Attorneys for Plaintiff
Arctic Cool, LLC